UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARK WOLOSHIN, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 15-2588 |
| v. | : | |
| | | OPINION |
| RUTGERS UNIVERSITY, JUAN COLLAZO, LISTON HODGE, KRIS SOLT, RUTGERS UNIVERSITY DINING SERVICES DIRECTORS AND MANAGERS 1-10, and RUTGERS UNIVERSITY HUMAN RESOURCES STAFF 1-50, | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 15.] The Court heard oral argument on the motion on August 9, 2016, and the record of that proceeding is incorporated here. For the reasons place on the record that day, as well as those outlined below, the motion will be granted.

Background

Essentially, Plaintiff has alleged that Defendants terminated his employment because of his disability or perceived disability, in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a),

1

and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1.

Plaintiff Mark Woloshin is deaf. In January 2013, he attended a job fair held by Rutgers University Dining Services at Rutgers University's Camden Campus. After learning about the job fair from Defendant Juan Collazo, Plaintiff twice spoke with a representative of Dining Services on an operator-assisted video phone for the deaf. There was no sign language interpreter at the job fair. At the job fair, Plaintiff allegedly informed Danielle Niro, Assistant Director of Business Affairs for Dining Services, that he did not understand the material reviewed. At the end of the presentation, however, Plaintiff met with Erich Burns, an Assistant Catering Manager for Dining Services. The two communicated by pen and paper and together completed Plaintiff's job application. At the top of his application, Plaintiff wrote, "I'm deaf of hearing. Thank you."

Subsequently, Plaintiff received a job offer via the operator-assisted video phone for a dishwasher position at the Camden campus dining facility, with a start date of February 20, 2013. He reported to work that day and attended a new hire orientation. There was no sign language interpreter at the new hire orientation, nor was a sign language interpreter provided at Dining Services group meetings or in the workplace. As such,

Plaintiff contends he did not understand the rules of the workplace and did not understand who his managers were.

Plaintiff has alleged that Defendants' failure to provide a sign language interpreter constituted a failure to engage in an interactive process to assure that Plaintiff was accommodated in the workplace because of a disability. He also states that he was harassed in the workplace because of his disability by Defendants Juan Collazo and Liston Hodge.

At the heart of this matter are the events that took place a full year after Plaintiff began his employment with Dining Services. He alleges that on the evening of February 23, 2014, Collazo took a bag of shrimp out of the Dining Services freezer and asked Plaintiff "if he wanted one." (Am. Compl., ¶ 32.) Plaintiff responded "yeah." (Am. Compl., ¶ 33.) Colazzo allegedly told Plaintiff "to hide the opened box of frozen shrimp and take it home to feed his family." (Am. Compl., ¶ 34.) Next, Plaintiff alleges that he thought Collazo "was a manager who had the authority to giving him food to take home, so Plaintiff . . . thinking that perhaps the opened bag of frozen shrimp had an approaching expiration date . . . packed the opened box of frozen shrimp in his backpack." (Am. Compl., ¶ 35.) That evening, Crystal Campfield called Plaintiff to her office, inspected his backpack, and informed Plaintiff he was fired. (Am. Compl., ¶ 38.) The following day,

Defendant Kris Solt confirmed by an operator-assisted video phone call that Plaintiff had been terminated. (Am. Compl., ¶ 39.) Plaintiff complains that he was not offered a hearing and opportunity to be heard with a sign language interpreter present. (Am. Compl., ¶ 42.)

Plaintiff filed a ten-count Amended Complaint with this Court in October of 2015. The first four counts are for various violations of Title I of the ADA allegedly caused by Defendants' discriminatory intent. Through briefing and at oral argument, Plaintiff's counsel conceded that these claims are valid only against the employer, Rutgers University, not against any individual Defendants. See Koslow v. Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002). In addition, in briefing and during oral argument, Plaintiff abandoned the procedural due process claims brought under the Fourteenth Amendment and New Jersey Constitution. (Pl. Br., p. 18.) There are four counts remaining, brought pursuant to the NJLAD. Again, Plaintiff concedes that there are no viable claims against individuals under the NJLAD unless against a supervisor for aiding and abetting. The only supervisor named as a Defendant is Solt; Plaintiff argues that Solt's failure to provide a sign language interpreter at the February 20, 2013 orientation constituted deliberate indifference and substantially assisted the unlawful conduct of his employer. Plaintiff further clarified that he abandoned any

claim of harassment by Defendant Hodge, so there is no claim regarding Hodge's alleged harassment against Rutgers University or Solt. Rather, the only remaining allegation of discriminatory harassment is regarding the actions of Collazo attributable to Rutgers University, as Plaintiff has conceded that summary judgment is appropriate insofar as this claim has been alleged against Solt. (Pl. Br., p. 17.)

In summary, the Court is left with: Count I – employment discrimination by Rutgers University in violation of Title I of the ADA; Count II – harassment as discrimination by Rutgers University in violation of Title I of the ADA; Count III – failure by Rutgers University to accommodate Plaintiff's known physical limitation in violation of Title I of the ADA; Count IV – failure by Rutgers University to engage in the interactive process mandated by the ADA in violation of Title I of the ADA; Count VI – employment discrimination in violation of the NJLAD by Rutgers University; Count VII – harassment as discrimination by Rutgers University and aided and abetted by Solt in violation of the NJLAD for the actions of Collazo; Count VIII – failure by Rutgers University to accommodate Plaintiff's known physical limitation in violation of the NJLAD; Count IV – failure by Rutgers University to engage in the interactive process in violation of NJLAD.

5

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)); <u>accord</u> Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the

nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party

7

cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

Title I of the ADA prohibits an employer[1] from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, under the NJLAD, an employer may not discriminate or take any unlawful employment practice "against any person

---

[1] Incorporating the enforcement scheme of the Civil Rights Act of 1964, Title I of the ADA authorizes private injunctive suits against a "respondent," defined by statute to include an "employer." 42 U.S.C. §§ 2000e(n), 2000e–5(f)–(g). Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 177 (3d Cir. 2002).

because such person is or has been at any time disabled." N.J. Stat. Ann. § 10:5–4.1.

The Supreme Court's standard articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), provides the burden shifting framework this Court uses to assess an ADA claim on a motion for summary judgment. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Analysis of a claim under the NJLAD also follows that of a claim under Title VII. Schurr v. Resorts Intern. Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).

"To establish a *prima facie* case of discrimination under the ADA, a plaintiff must . . . show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (citing Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999)). See also Clowes v. Terminix Intern., Inc., 538 A.2d 794, 805 (N.J. 1988) (regarding the *prima facie* case of handicap discrimination under the NJLAD). In the end, a plaintiff must show that his disability "actually motivated the employer's decision." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (citation omitted).

No party contests that Plaintiff was disabled. The Court will also assume, since he worked in the position for a year, that Plaintiff was otherwise qualified to perform the essential functions of his job. The issue then becomes whether Plaintiff suffered an adverse employment decision as a result of discrimination. If so, the defense may proffer a legitimate non-discriminatory reason for its action and shift the burden back to Plaintiff to establish pretext. In this case, however, the record is clear that Plaintiff was terminated for stealing from his employer.

Plaintiff now argues that "he suffered an adverse employment decision as a result of his disability by way of deliberate indifference . . . in that he was never provided with an American Sign Language interpreter" on February 20, 2013. (Pl. Br., p. 6-7.) Thus, in briefing this motion, Plaintiff has not argued that his termination was the adverse employment action at issue. (Pl. Stmt. Material Facts, ¶ 70.) Rather, it appears that Plaintiff's main claim is now that Rutgers University did not accommodate his disability by providing a sign language interpreter at his employee orientation.

To establish a *prima facie* case of failure to accommodate under the ADA, Plaintiff must establish: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or

without reasonable accommodation; and (3) his employer refused to provide him with a proposed reasonable accommodation. See Solomon v. Sch. Dist. of Philadelphia, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012). To make out a *prima facie* failure to accommodate claim under the NJLAD, Plaintiff must show that: (1) he was disabled or perceived to have a disability[2]; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) he suffered an adverse employment action because of the disability. Victor v. State, 952 A.2d 493, 503 (N.J. Super. Ct. App. Div. 2008), aff'd as modified, 4 A.3d 126 (N.J. 2010).

When an employee requests accommodation, the employer has a duty to engage in an interactive process in an effort to assist the employee. Jones v. United Parcel Svc., 214 F.3d 402, 408 (3d Cir. 2000). To show that an employer failed to participate in the interactive process, "the employee must show the employer was informed of the disability, the employee requested accommodation, the employer made no good faith effort to assist, and the accommodation could have been reasonably

---

[2] The NJLAD refers to "handicap," but defines handicap as a disability. Courts have used the terms interchangeably in this context. See Victor v. State, 4 A.3d 126, 135 (N.J. 2010).

11

achieved" but for the employer's lack of good faith. Victor, 952 A.2d at 504 (citing Tynan v. Vicinage 13 of the Superior Court, 798 A.2d 648, 657 (N.J. Super. Ct. App. Div. 2002)).[3] "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered [the] employee's request, and offer and discuss available alternatives when the request is too burdensome." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999).

The ADA's regulations provide: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of

---

[3] Under the ADA, an employer commits unlawful discrimination if the employer does not reasonably accommodate the known physical or mental limitations of an otherwise qualified disabled employee, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). Similarly, under the LAD, an employer "must make a reasonable accommodation to the limitations of a handicapped employee or applicant unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." Soules v. Mt. Holiness Memorial Park, 808 A.2d 863, 867 (N.J. Super. Ct. App. Div. 2002) (internal citations omitted); N.J.A.C. 13:13-2.5(a) and 2.8(a)(b)(1).

accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

Here, Defendants argue that Plaintiff cannot show that he requested a reasonable accommodation for his disability at no time did Plaintiff ever request an interpreter – or any accommodation for that matter. See Solt Cert. ¶ 20, 27 ("At the time he received and signed the new hire documents, Plaintiff did not ask for an interpreter to assist him, nor did he tell Ms. Smith or me that he did not understand what he was signing." "At no time during his employment with Rutgers did Plaintiff ever request that he be provided with an interpreter."). Further, there is nothing in the record evidence to suggest Defendants were aware that Plaintiff needed an accommodation, or that he did not know how to ask for one. Accordingly, Defendants' obligation to participate in the interactive process with Plaintiff, or provide Plaintiff with an interpreter, was not triggered.

Plaintiff counters that this is a case of disparate treatment, where his disability motivated Defendants' decision to put him at a disadvantage by not providing a sign language interpreter at his new employee orientation to be on equal footing with hearing employees to understand the rules. (Tr. of Oral Arg., p. 19.) The Court finds no discriminatory animus in the record,

13

however, regarding the lack of a sign language interpreter at the orientation, which was held approximately one year prior to the shrimp incident.[4] Therefore, Plaintiff's claims of discrimination do not survive.

The Court is left with the claim of Collazo's harassment of Plaintiff due to his disability. The standards applicable to harassment claims under Title VII apply to the other statutory prohibitions against employment discrimination, including claims of disability harassment. See Walton v. Mental Health Ass'n of S.E. Pa., 168 F.3d 661, 667 (3d Cir. 1999). Thus, to succeed on a claim for harassment based on disability a plaintiff must show that: "(1) [he] is a qualified individual with a disability under the ADA [or LAD]; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on h[is] disability …; (4) the harassment was sufficiently severe or pervasive to alter the conditions of h[is] employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action." Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 700 (W.D.

---

[4] To the contrary, Plaintiff's supervisor, Defendant Kris Solt, certified, "My ex-wife, to whom I was married for 18 years, and the mother of my two children, has a hearing impairment. She is totally deaf in her right ear and partially deaf in her left ear since she was a baby, as the result of Scarlet Fever. Living with her made me very [cognizant] of others with hearing disabilities and helped me to develop skills to better communicate with those who have hearing impairments." (Solt Cert. ¶ 26.)

14

Pa. 2014) (citing Walton, 168 F.3d at 667). Factors relevant to the determination of whether the work environment is hostile or severe include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, 510 U.S. 17, 23 (1993). Not all, merely alleged, offensive conduct is legally actionable harassment. Rather, in order to prevail on his claim, Plaintiff must also prove that the conduct of which he complains was so "severe or pervasive" that it "altered the terms and conditions of h[is] employment" and "created a hostile and abusive working environment." See Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986); West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1999).

     There is nothing in the Amended Complaint or briefing on this motion that indicates what Collazo did that could be construed as harassment based on disability discrimination. At oral argument, there was mention that Collazo allegedly slapped Plaintiff "on the butt." There has been no causal connection, however, between that alleged action and Plaintiff's disability, nor is there any indication that Defendants were aware of the conduct.

## Conclusion

For the reasons stated above, and in keeping with the discussion held on the record during oral argument, Defendants' motion for summary judgment will be granted.  An Order will accompany this Opinion.

Dated: September 28, 2016            /s/ Joseph H. Rodriguez
                                     Joseph H. Rodriguez, USDJ